IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JAMES WILLARD AND KIMBERLY WILLARD | * * * | CIVIL ACTION NO.: |
| | * | JUDGE |
| VERSUS | * * | MAGISTRATE JUDGE |
| FEDNAT INSURANCE COMPANY | * * | JURY DEMAND |

*************************************************************************

## COMPLAINT FOR DAMAGES AND JURY DEMAND

**NOW INTO COURT,** through undersigned counsel, comes Complainants, James and Kimberly Willard, (hereinafter "Complainants"), and files their Complaint for Damages against Defendant, FedNat Insurance Company (hereinafter "FedNat"), respectfully averring as follows:

### I. PARTIES

1. Made Plaintiff herein is **JAMES WILLARD,** an adult resident of the parish of Calcasieu, Louisiana.

2. Made Complainants herein is **KIMBERLY WILLARD**, an adult resident of the parish of Calcasieu, Louisiana.

3. Made Defendant herein is **FEDNAT INSURANCE COMPANY**, an insurer with a State of Incorporation of Florida with a principal place of business in Florida, who is authorized to do and is doing business in the State of Louisiana and the Parish of Calcasieu, which may be served through its Registered Agent for Service of Process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana 70809.

### II. JURISDICTION AND VENUE

4. Jurisdiction is proper in this Honorable Court pursuant to 28 U.S.C. § 1332 and 1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

5. Venue is proper in this Honorable Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District; Complaints resides in this District and the property that is subject to the dispute between Complainants and FEDNAT is located in this District.

### III.  RELEVANT FACTS

6. At all times relevant hereto, Complainants owned the property located at 21531 Gro Racca Road, Iowa, Louisiana 70647 (the "Property");

7. At all times relevant hereto, Defendant provided a policy of insurance, number FNL204626202 (the "Policy"), to Complainants, which covered the Property against perils including hurricanes and provided the following coverages: $288,000 for Dwelling; $28,800 for Other Structures; $144,000 for Personal Property; *inter alia*.

8. On or around August 27, 2020, Hurricane Laura caused significant damages to Complainants' Property, including Complainants' roof which came partially off.

9. Complainants promptly reported the loss to Defendant, who assigned it claim number HO0120324873 (the "Laura Claim").

10. On or about September 12, 2020, FedNat dispatched Neville Tai to document the loss, who determined $86,392.54 in damages to the dwelling and $29,402.45 in damages to Other Structures. After application of the Policy's deductible and over-depreciation, Complainants were left with $75,769.41 to fix their property.

11. Nevertheless, FedNat failed to compensate based off of their own estimate ($75,769.41) as this amount was never received by Complainants.

12. This inspection constituted satisfactory proof of loss, as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

13. With no funds received by FedNat, Complainants were left with coming out of pocket to repair their roof, in an effort to mitigate their damages as best as they could.

14. Three days after replacing their roof, Hurricane Delta swept through the area, causing more devastation to the Property.

15. By this time, Complainants were on their 13th desk adjuster and still, no payment was ever received.

16. Complainants timely filed their second claim, claim number HO0120336037 (the "Delta Claim") with FedNat.

17. On or about October 16, 2020, FedNat dispatched Bruce Cochrane with Claims Adjustment Group, Inc., to inspect and estimate the damages. Mr. Cochrane determined $40,184.97 in damages to the dwelling and $3,378.63 in damages to other structures.

18. Not until December 7, 2020, did Complainants receive Mr. Cochrane's estimate. Even then, Complainants were not afforded any proceeds under the policy.

19. Complainants immediately put FedNat on notice of their poor adjustment of the loss and began mitigating their damages to the best of their ability.

20. Complainants were displaced by Hurricane Laura and Hurricane Delta and raising their two grandchildren, as their daughter just passed a month before the Hurricane.

21. Complainants rented a camper in order to provide shelter for their family. Complainants sent FedNat a copy of the lease contract.

22. Instead of reimbursing Complainants for ALE, FedNat demanded a new lease be signed.

23. Complainant thereafter bought a camper.

24. To date, no proceeds have been received from FedNat regarding this camper.

25. Furthermore, Complainants began putting in their content list.

26. FedNat refused to timely compensate on contents.

27. Complainants also began sending in a hoist of estimates, ranging from $160,000 to $280,000.

28. FedNat denied them all.

29. Instead, FedNat dispatched Ethan Wild to estimate the damages. Mr. Wild determined $101,576.50 in damages to the dwelling and $3,467.59 in damages to the other structures.

30. Upon receipt of this first payment, FedNat erroneously combined Complainants Hurricane Laura and Delta claims as one.

31. Complainants were unable to make meaningful repairs to the Property due to Defendant's failure to tender any funds.

32. As a result, Complainants began to work themselves to repair their dwelling in an effort to put his grandchildren back into the Home.

33. Complainant tried to get reimbursement from the excess expenses in repairing the dwelling.

34. FedNat refused to issue any supplemental payments.

35. Complainants was forced to incur the expenses of retaining counsel and other expenses to prosecute his claim.

36. On or about April 13, 2022, Complainants invoked appraisal under the Policy's Provision, choosing Tammy Siebarth with S&G Consulting.

37. As of the date of this filing, FedNat still has not tendered over sufficient amount to Complainants.

38. As a result of Defendant's failure to timely and adequately compensate Complainants for their substantial loss, the Property remains in a state of disrepair.

39. Upon information and belief, Defendant's failure to timely and adequately compensate Complainants for their loss, after receiving satisfactory proof of loss, was purposeful or at least negligent.

40. Upon information and belief, Defendant's purposely and/or negligently misrepresented to Complainants the terms and conditions of the Policy.

41. Upon information and belief, Defendant conducted the investigation and claims handling for Complainants' claim in bad faith, as that term is term is used in conjunction with Louisiana's bad faith statutes, La R.S. §§ 22:1892 and 22:1973.

42. Upon information and belief, Defendant manipulated its pricing software to artificially suppress the cost of repairs below market value.

43. Complainants has incurred or will incur additional expenses in repairing the Property as a result of Defendant's failure to timely compensate them for their substantial and covered losses.

### III. CAUSES OF ACTION

### A. Breach of the Insurance Contract

44. Complainants realleges and re-avers the allegations contained in paragraphs 1-43, above, as if restated herein.

45. An insurance contract, the Policy, exists between Complainants and Defendant.

46. The Policy provides coverages for perils including hurricanes.

47. Despite having received satisfactory proof of loss for damages caused by Hurricane Laura and Hurricane Delta, Defendant failed to timely tender adequate insurance proceeds as required by the Policy.

48. By failing to timely tender adequate insurance proceeds after having received satisfactory proof of a covered loss by way of Defendant's inspection(s), Defendant breached the Policy.

49. By failing to timely tender undisputed insurance proceeds after having received satisfactory proof of a covered loss by way of the numerous estimates and invoices, Defendant breached the Policy.

50. By purposely and/or negligently misrepresenting to Complainants the terms and conditions of the Policy, Defendant breached the Policy.

51. By failing to conduct the claims handling for Complainants' Laura Claim and Delta Claim in good faith and with fair dealing, Defendant breached the Policy.

52. By manipulating its pricing software to artificially suppress the cost of repairs below market value, Defendant breached the Policy.

53. Complainants have suffered and continue to suffer damages as a result of these breaches of the Policy.

### B. Bad Faith

54. Complainants realleges and re-avers the allegations contained in Paragraphs 1-53, above, as if restated herein.

55. The actions and/or inactions of Defendant in failing to timely and adequately compensate Complainants for the covered losses under the Policy were arbitrary, capricious, and without probable cause—as those terms are used in conjunction with La. R.S. §§ 22:1892 and 22:1973, making Defendant liable for statutory bad faith penalties.

56. Under La. R.S. § 22:1973, an insurer owes a good faith duty and fair dealing to an insured and has an affirmative duty to adjust claims fairly and promptly; failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. § 22:1973.

57. "[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. § 22:1973.

58. La. R.S. § 22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

59. Defendant is in violation of La. R.S. §§ 22:1973 and 22:1892 for failing to provide Complainants adequate payment in connection with their Laura Claim and Delta Claim, despite having received satisfactory proof of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Complainants.

60. Defendant's misrepresentation of the relevant facts and/or the terms of the Policy was in bad faith.

61. Defendant's failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith.

62. Defendant's failure to pay timely for damages it knew, or should have known, existed at the time it received the Pinnacle's estimate and photographs was in bad faith.

63. Defendant's manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith.

64. Defendant's handling of Complainants' Laura Claim and Delta Claim was in bad faith.

## IV.  DAMAGES

65. Complainants realleges and re-avers the allegations contained in Paragraphs 1-64, above, as if restated herein.

66. As a result of Defendant's breaches of contract, bad faith claims adjusting, and other bad acts, Complainants have incurred the following, non-exclusive damages:

    a. Diminution of the value of the Property;

    b. Actual repair costs;

    c. Reimbursement for personal repairs at the Property;

    d. Loss of business income;

    e. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

    f. Mental anguish;

    g.  Penalties delineated in La. R.S. §§ 22:1892 and 22:1973; and

    h.  Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

## JURY DEMAND

67. Complainants requests a trial by jury.

**WHEREFORE,** Complainants, James Willard and Kimberly Willard, prays that, Defendant, FedNat Insurance Company, be served with a copy of this Complaint and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there be a judgment entered in favor of Complainants, James Willard and Kimberly Willard, and against Defendant, FedNat Insurance Company, in an amount that will fully and fairly compensate Complainants pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

Dated: 8/24/2022

**RESPECTFULLY SUBMITTED:**

    /s/ Shay F. Jaume
Galen M. Hair, La. Bar. No. 32865
Shay F. Jaume, La. Bar No. 39922
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC.**
**d/b/a INSURANCE CLAIM HQ**
**d/b/a INSURANCE CLAIM LAWYERS, INC.**
3540 S. I-10 Service Rd., W, Ste. 300
Metairie, Louisiana 70001
Telephone: 504.684.5200
Facsimile: 504.613.6351
hair@hairshunnarah.com
shay@hairshunnarah.com

*Attorneys for the Complainants.*

Case 2:22-cv-03794-JDC-TPL Document 1 Filed 08/24/22 Page 10 of 10 PageID #: 10